UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TRANSCEND CRUISES INC.,

        Plaintiff,

                   25-cv-8796 (PKC)

    -against-               <u>OPINION AND ORDER</u>

TRANSCENDENT TRAVEL SERVICES,
LLC,

        Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

    Plaintiff Transcend Cruises Inc. ("Transcend"), a company that offers European river cruises, brings this action pursuant to the Lanham Act, 15 U.S.C. § 1051 <u>et seq.</u>, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Transcend seeks a declaration that it is not infringing the trademark of defendant Transcendent Travel Services, LLC ("TTS") and the dismissal of proceedings brought by TTS before the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("USPTO"). TTS has moved to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P. Because Transcend has plausibly alleged an actual controversy between the parties, the Court will deny TTS's motion to dismiss.

BACKGROUND.

    Since 2024, plaintiff Transcend has operated chartered river cruises in countries including France, Germany, Switzerland, Austria, Hungary, the Netherlands, and Belgium.

(Compl't ¶¶ 7–8, 10.)  Transcend markets its cruises to business customers.  (Id. ¶¶ 7, 9.) Transcend currently offers cruises on a leased ship, but it is constructing its own purpose-built ship, the Transcend Connect, and will soon start construction on a second ship, the Transcend Evolve.  (Id. ¶ 10.)

Defendant TTS offers land-based tours in the United Kingdom and Canada.  (Id. ¶ 19.)  It sells its tours to individual consumers.  (Id. ¶ 20.)  TTS is the registrant of the wordmark "TRANSCENDENT" in International Class 39, and "TRANSCENDENT" is federally registered as Reg. No. 7,269,520.  (Id. ¶¶ 23–24.)  The TRANSCENDENT mark was registered on January 9, 2024.  (ECF 1-5.)

On June 17, 2025, the USPTO granted Transcend's application for registration of the wordmark "TRANSCEND CRUISES," which is registered as Reg. No. 7,836,369.  (Compl't ¶¶ 13–14.)  On February 20, 2025, Transcend applied to register the wordmarks "TRANSCEND CONNECT" and "TRANSCEND EVOLVE"—the names of its two planned ships—with the USPTO.  (Id. ¶¶ 15–16.)  The "TRANSCEND EVOLVE" application was approved by the USPTO and published for opposition on September 9, 2025, but as of the time the Complaint was filed, the "TRANSCEND CONNECT" application remained pending.  (Id. ¶¶ 15–17.) Transcend also applied on April 3, 2025 to register a design mark that included the phrase "TRANSCEND CRUISES."  (Id. ¶ 18.)

On July 9, 2025, TTS filed a Petition for Cancellation of the "TRANSCEND CRUISES" registration.  (Id. ¶ 25.)  In the petition, TTS argues that "there is a high likelihood of confusion if Transcend is permitted to continue use of its mark."  (Id. ¶ 26 (emphasis omitted).) On September 10, 2025, TTS also filed a Notice of Opposition against the "TRANSCEND EVOLVE" application.  (Id. ¶ 27.)  In that notice of opposition, TTS also argues that "there is a

high likelihood of confusion if [Transcend] is permitted to continue use of its mark." (Id. ¶ 28 (emphasis omitted).)

On September 16, 2025, counsel for TTS sent a letter to counsel for Transcend responding to an earlier letter from Transcend's counsel. (ECF 1-8.) In the letter, counsel for TTS stated that "at this 'early stage' of the proceeding, it would be prudent for your client to cease use of its TRANSCEND marks, cancel its registration, and abandon its pending applications." (Id.) The letter further stated that "[s]uch action should be particularly advantageous to your client in light of the fact that you acknowledge the 'extraordinarily limited use of the "Transcend" brand.'" (Id.)

On October 23, 2025, Transcend initiated this action. (ECF 1.) The Complaint asserts that "[u]nder the circumstances, Transcend possesses an objectively reasonable apprehension that TTS will file suit for trademark infringement based on Transcend's *use* of its TRANSCEND-formative marks." (Compl't ¶ 30 (emphasis in original).) The Complaint brings three claims for relief. The first claim, for "Declaratory Judgment of Non Infringement," requests a ruling that "TTS's claim of infringement by Transcend's use of the wordmarks 'TRANSCEND CRUISES,' 'TRANSCEND EVOLVE,' and any other 'TRANSCEND'-formative mark, in the cruise ship services marketplace, is without legal merit." (Id. ¶ 33.) The second claim, for "Dismissal Of The Petition for Cancellation," requests "a ruling that TTS cannot cancel the [TRANSCEND CRUISES] Registration." (Id. ¶ 39.) Transcend's third claim, for "Dismissal of the Notice of Opposition," requests a ruling that "TTS's Notice of Opposition against the [TRANSCEND EVOLVE] Application is . . . without legal merit." (Id. ¶ 44.)

TTS now moves to dismiss the Complaint for lack of subject matter jurisdiction. (ECF 19.) Along with its motion, TTS has submitted materials detailing further developments in

the parties' dispute since the Complaint was filed.  Specifically, Transcend's application to register the "TRANSCEND CRUISES" design mark matured and TTS submitted a Petition for Cancellation of that mark on January 22, 2026.  (ECF 21-2.)  The same day, TTS filed a Notice of Opposition to the "TRANSCEND CONNECT" wordmark.  (ECF 21-3.)  Like TTS's other submissions to the TTAB, the January 22, 2026 filings allege that "there is a high likelihood of confusion" between TTS's mark and Transcend's marks.  (ECF 21-2 ¶ 9; ECF 21-3 ¶ 9.)

DISCUSSION.

I.    Rule 12(b)(1) Standard.

Rule 12(b)(1) permits a defendant to move to dismiss an action for lack of subject matter jurisdiction.  A Rule 12(b)(1) motion may be either fact-based or facial.  Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016).  When the motion is directed to the face of the complaint, the court must accept all uncontroverted allegations as true and draw every reasonable inference in favor of the plaintiff.  Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014).  However, where "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  Id. (internal quotation marks omitted).  The party asserting subject matter jurisdiction must prove its existence by a preponderance of the evidence. Id.

II.    Transcend Plausibly Alleges an Actual Controversy.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

"The Declaratory Judgment Act confers on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" Peconic Baykeeper, Inc. v. Suffolk County, 600 F.3d 180, 187 (2d Cir. 2010) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)). It does not, however, expand the subject matter jurisdiction of the federal courts. Nike, Inc. v. Already, LLC, 663 F.3d 89, 95 (2d Cir. 2011), aff'd, 568 U.S. 85 (2013). To qualify as a "case of actual controversy" under the Declaratory Judgment Act, the Supreme Court has "required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240–41 (1937)). There must be a "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (internal quotation marks omitted) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

Because "[d]eclaratory judgment actions are particularly useful in resolving trademark disputes . . . the finding of an actual controversy should be determined with some liberality." Starter Corp. v. Converse, Inc., 84 F.3d 592, 596 (2d Cir. 1996). Courts "have long accepted jurisdiction" in "situations in which the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of a private party . . . ." MedImmune, 549 U.S. at 130

(emphasis omitted). "A more restrictive view would . . . require [a company] to go to substantial expense in the manufacture, marketing, and sale of its [product], and subject itself to considerable liability for a violation of the Lanham Act before its right to even engage in this line of commerce could be adjudicated." Starter Corp., 84 F.3d at 596. The Court should consider the totality of the circumstances in its analysis of subject matter jurisdiction and "the threat of future litigation remains relevant in determining whether an actual controversy exists." Nike, 663 F.3d at 95–96.

The Second Circuit has emphasized that no "particular action or combination of actions is always necessary to find that a case or controversy exists" and that "each case must be judged on its own merits." Saleh v. Sulka Trading Ltd., 957 F.3d 348, 356 (2d Cir. 2020). But it is "well-settled within this Circuit that the existence of a dispute before the TTAB over the registration of a party's mark, on its own, is insufficient to establish sufficient adversity for the purposes of a declaratory judgment action." Halo Lifestyle LLC v. Halo Farm, Inc., 18-cv-9459 (PAE), 2019 WL 1620744, at *3 (S.D.N.Y. Apr. 16, 2019) (Engelmayer, J.) (internal quotation marks omitted) (quoting 1-800-Flowers.com, Inc. v. Edible Arrangements, LLC, 905 F. Supp. 2d 451, 454 (E.D.N.Y. 2012)); see also Bruce Winston Gem Corp. v. Harry Winston, Inc., 09-cv-7352 (JGK), 2010 WL 3629592, at *5 (S.D.N.Y. Sept. 16, 2010) (Koeltl, J.) ("[T]he existence of a dispute before the TTAB is insufficient to establish sufficient adversity for purposes of a declaratory judgment action.").

The Complaint and its accompanying exhibits plausibly allege that there is an "actual controversy" between the parties. Taken together, the totality of the circumstances suggests that the parties "hav[e] adverse legal interests . . . of sufficient immediacy and reality" to warrant this Court's jurisdiction. MedImmune, 549 U.S. at 127. As the Complaint alleges,

TTS filed with the TTAB a Petition for Cancellation of the registration of the TRANSCEND CRUISES mark on July 9, 2025, and a Notice of Opposition against the application for registration of the TRANSCEND EVOLVE mark on September 10, 2025.  (ECF 1-6 & 1-7.) TTS asserted that "[g]iven the similarity between the parties' respective marks and the great similarity and closeness of the services, there is a high likelihood of confusion if" Transcend "is permitted to continue use of its mark as registered for the services listed therein."  (ECF 1-6 ¶ 9; ECF 1-7 ¶ 9.)  TTS's submissions to the TTAB further claim that it "will be damaged" by the registration of Transcend's marks.  (ECF 1-6 at 5; ECF 1-7 at 5.)

While the proceedings in the TTAB on their own cannot support the Court's jurisdiction, Transcend's assertion of jurisdiction is also premised on the correspondence between the parties.  Along with its motion to dismiss, TTS supplied the Court with an August 26, 2025 letter from Transcend to TTS.  (ECF 21-1.)  In that letter, Transcend stated that it had reviewed TTS's petition for cancellation and that it believed that its mark "poses no possible real-world confusion with the services of TTS" and that "[g]iven the significant differences in services and customers, and the sophistication of Transcend's charter customers, no confusion is likely."  (Id.)  Transcend further stated that it would be willing to amend its trademark ID and was willing to consider other terms to "help facilitate a resolution of this dispute."  (Id.)  TTS responded in a September 16, 2025 letter, requesting that Transcend cancel its registered trademark and abandon its pending trademark applications, but also that it cease its use of those marks:

> As you recognize, at this "early stage" of the proceeding, it would be prudent for your client to cease use of its TRANSCEND marks, cancel its registration, and abandon its pending applications.

> Such action should be particularly advantageous to your client in light of the fact that you acknowledge the "extraordinarily limited use of the 'Transcend' brand."

(ECF 1-8.)

These circumstances demonstrate that there is a real and substantial controversy between the parties that is fit for judicial resolution. TTS's letter and its request that Transcend "cease use of its TRANSCEND marks," when read in the context of its earlier-filed TTAB filings that allege the likelihood of confusion with TTS's mark, supports the conclusion that TTS's position is that Transcend's ongoing use of its marks in its river cruise business infringes on TTS's mark. See Vans, Inc. v. MSCHF Prod. Studio, Inc., 88 F.4th 125, 135–36 (2d Cir. 2023) (elements of a Lanham Act trademark infringement claim are that "(1) plaintiff owns a valid protectable mark; and (2) defendant's use of a similar mark is likely to cause consumer confusion as to the origin or association of the goods or services."). If the dispute between the parties was exclusively concerned with the registrability of the TRANSCEND marks, as TTS argues, there would be no reason for TTS to request that Transcend cease using its marks. The implication of TTS's letter is evident: that its position is that Transcend is infringing on its mark. See Classic Liquor Importers, Ltd. v. Spirits Int'l B.V., 151 F. Supp. 3d 451, 457 (S.D.N.Y. 2015) (Rakoff, J.) ("Defendant is not entitled to argue, after taking action that compelled plaintiff to sue to clarify its rights vis-à-vis defendant, that it did not really mean what it said in its [cease-and-desist] letter.").

TTS's reliance on Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc., 784 F. Supp. 2d 391, 393 (S.D.N.Y. 2011) (Stein, J.), is misplaced. There, the defendant wine manufacturer sent a cease-and-desist letter to the plaintiff demanding that plaintiff "expressly abandon its pending trademark application" and "agree not to file any other applications" for

marks that were similar to the defendant's mark.  Vina Casa, 784 F. Supp. 2d at 393–94

(brackets omitted).  But critically, the letter "did not specifically object to [plaintiff]'s continued

use of the [disputed] mark."  Id. at 394.  Thus, because the letter "did not claim trademark

infringement, contest plaintiff's continued use of the mark, or make any further demands," the

court determined that the dispute only involved the registration of plaintiff's mark before the

TTAB and that it therefore lacked subject matter jurisdiction.  Id. at 395–97.  The court reached

this conclusion despite the allegation that the defendant "objected . . . to settlement proposals that

[would] allow plaintiff to continue using the mark."  Id. at 396.  TTS, following this reasoning in

Vina Casa, attempts to recast its letter as "protective settlement communications" and as a

"negotiation response" to the earlier letter from Transcend.  (ECF 20 at 10; see also ECF 21-1.)

But the facts of Vina Casa are simply not analogous to those in the instant case; here, TTS itself

expressly and specifically raised the issue of Transcend's "use of its TRANSCEND marks" in its

own letter.  (ECF 1-8.)  TTS has thus shown that its dispute with Transcend's marks goes beyond

mere registrability, and Vina Casa is not on point.  See Gelmart Industries, Inc. v. Eveready

Battery Co., 120 F. Supp. 3d 327, 331 (S.D.N.Y. 2014) (allegations were sufficient to raise an

actual controversy despite the fact that the defendant's cease-and-desist letter "stop[ed] short of

using the words 'infringement' and 'dilution'" and merely "request[ed]" without threatening

litigation that the plaintiff cease its use of the disputed mark).

TTS argues that its letter to Transcend did not contain "a concrete threat of

imminent federal infringement litigation," and thus is insufficient to raise a case or controversy.

(ECF 20 at 10.)  But that argument confuses the standard for determining whether there is an

"actual controversy" under the Supreme Court's MedImmune decision.  Before MedImmune, the

Second Circuit required plaintiffs to show that "the defendant's conduct created a real and

reasonable apprehension of liability on the part of the plaintiff" to invoke the district court's subject matter jurisdiction in declaratory judgment actions. Nike, 663 F.3d at 95 (quoting Starter Corp., 84 F.3d at 595). But MedImmune "rejected [the] reasonable apprehension requirement" and recentered the analysis on whether the sought declaratory judgment is "of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. at 95–96 (internal quotation marks omitted) (quoting MedImmune, 549 U.S. at 127); see also Sasson v. Hachette Filipacchi Presse, 15-cv-194 (VM) (SN), 2016 WL 1599492, at *3 (S.D.N.Y. Apr. 20, 2016) (Netburn, M.J.) ("[A]n immediate threat of suit is no longer a prerequisite to subject matter jurisdiction in a declaratory judgment action.").

The parties' dispute is not "hypothetical." Transcend is currently marketing and operating its river cruises under the TRANSCEND marks. TTS has communicated that it should stop doing so. And TTS has claimed in filings with the TTAB that Transcend's use of its marks are likely to cause confusion with its own mark. See Classic Liquor Importers, 151 F. Supp. 3d at 458 ("[T]he Declaratory Judgment Act is designed precisely for situations . . . where a party is put on notice by another that it may be infringing the noticing party's rights and seeks to clarify and settle the legal relations in issue, as well as relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." (internal quotation marks and brackets omitted) (quoting Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 790 (2d Cir. 1986))).

Finally, TTS argues that Transcend's broad request for declaratory relief supports the conclusion that this suit involves a hypothetical rather than concrete dispute. In its Complaint, Transcend requests a ruling that "TTS's claim of infringement by Transcend's use of the wordmarks 'TRANSCEND CRUISES,' 'TRANSCEND EVOLVE,' and any other 'TRANSCEND'-formative mark, in the cruise ship services marketplace, is without legal merit."

- 10 -

(Compl't ¶ 33.)  TTS specifically takes issue with the request that any declaratory relief issued by the Court cover "any other 'TRANSCEND'-formative mark."  TTS is correct that the Court cannot exercise jurisdiction where the circumstances of the parties' dispute are such that "it would be difficult for the Court to fashion meaningful declaratory relief that did not amount to an advisory opinion regarding a hypothetical scenario."  Off-White LLC v. Paige, LLC, 17-cv-2904 (JSR), 2017 WL 3605625, at *3 (S.D.N.Y. Aug. 1, 2017) (Rakoff, J.); see also Bruce Winston, 2010 WL 3629592, at *6 (no subject matter jurisdiction where "declaratory judgment action would necessarily entail advisory opinions into how far the plaintiff[] can go in its future activities without infringing on the defendants' marks").  It is not the Court's role "to construct the future framework of the interaction between the parties in the absence of a specific dispute about an imminent activity."  Bruce Winston, 2010 WL 3629592, at *5.

But again, this case does not seek to construct a "future framework of interaction."  TTS sent its letter to Transcend after filing a petition for cancellation of the TRANSCEND CRUISES mark and an opposition to registration of the TRANSCEND EVOLVE mark.  TTS's letter requests that Transcend "cease use of its TRANSCEND marks" and "abandon its pending applications."  (ECF 1-8.)  The Complaint only refers to the TRANSCEND CRUISES, TRANSCEND EVOLVE and TRANSCEND CONNECT wordmarks and a design mark incorporating the phrase TRANSCEND CRUISES.  Transcend is using these marks as its brand and the names of its two planned ships.  Neither of the parties have suggested Transcend intends to use these marks for other purposes.  This is not a case where the Court would need to speculate as to which marks and which uses of those marks would be the subject of any declaratory relief it may eventually issue.

Because the Complaint has raised an actual controversy under the Declaratory Judgment Act, TTS's motion to dismiss for lack of subject matter jurisdiction will be denied.[1]

CONCLUSION.

TTS's motion to dismiss the complaint is DENIED. The Clerk is respectfully directed to terminate the motion (ECF 19).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
May 21, 2026

---

[1] Because the Court concludes that it has subject matter jurisdiction over the action under the Declaratory Judgment Act, it need not consider TTS's argument that Transcend's requests under 15 U.S.C. § 1119 for dismissal of the cancellation and opposition proceedings before the TTAB do not provide an independent source of jurisdiction. See George & Co., LLC v. Spin Master Corp., 22-126-cv, 2023 WL 6053005, at *1 (2d Cir. Sept. 18, 2023) (summary order) ("A request for trademark cancellation under § 1119 does not provide an independent basis for jurisdiction, and the case must be dismissed unless there is a separate claim that provides a basis for federal jurisdiction."); Empresa Cubana del Tabaco v. Culbro Corp., 541 F.3d 476, 478 (2d Cir. 2008) (acknowledging that a request for dismissal of a cancellation proceeding pursuant to section 1119 can be made in infringement actions).